Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/29/2018 11:13 AM CDT

State of Nebraska, appellee, v.
Keshaud D. Hunt, appellant.
___ N.W.2d ___

Filed April 6, 2018.    No. S-17-327.

1. **Criminal Law: Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
4. **Courts: Juvenile Courts: Jurisdiction.** In order to retain proceedings in criminal court, the court need not resolve every statutory factor in favor of transfer against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.
5. **Courts: Juvenile Courts: Evidence.** Under Neb. Rev. Stat. § 29-1816(3) (Reissue 2016), after considering the evidence and the criteria set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016), the court shall transfer the case to juvenile court unless a sound basis exists for retaining the case in county court or district court.
6. **Courts: Juvenile Courts: Judgments.** When ruling on a motion to transfer to juvenile court under Neb. Rev. Stat. § 29-1816(3) (Reissue 2016), the county or district court must set forth findings supporting its decision.

7. **Courts: Juvenile Courts: Jurisdiction: Proof.** In a motion to transfer to juvenile court, the burden of proving a sound basis for retaining jurisdiction in county court or district court lies with the State.
8. **Courts: Juvenile Courts: Jurisdiction: Evidence.** When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court.
9. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.
10. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.
11. ____. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. This is so, even when offenses carry a mandatory minimum sentence, unless the statute requires that consecutive sentences be imposed.

Appeal from the District Court for Douglas County: Gary B. Randall, Judge. Affirmed.

James Martin Davis, of Davis Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

Heavican, C.J., Cassel, Stacy, and Funke, JJ., and Pirtle, Judge.

Stacy, J.

Keshaud D. Hunt was 15 years old when he was charged in district court with multiple felonies arising from two armed robberies. His motion to transfer the case to juvenile court was overruled, and eventually, he pled no contest to an amended information. At the sentencing hearing, the district court denied

Hunt's request for disposition under the Nebraska Juvenile Code[1] and instead imposed consecutive prison sentences. Hunt appeals, assigning error to the denial of his motion to transfer and his request for disposition under the juvenile code. We affirm.

## BACKGROUND

On April 21, 2016, Hunt was charged with attempted second degree murder, robbery, attempted robbery, and three counts of using a deadly weapon (firearm) to commit a felony. All charges stemmed from events alleged to have occurred on March 16 in Omaha, Nebraska. Hunt was 15 years old at the time, and the charges were filed in the Douglas County District Court.[2]

### MOTION TO TRANSFER

After entering pleas of not guilty to the charges, Hunt moved to transfer the case to juvenile court pursuant to § 29-1816(3). An evidentiary hearing was held on September 8, 2016.

The State offered two exhibits, both of which were received. The first exhibit was a probable cause affidavit detailing Hunt's alleged crimes and the ensuing investigation. That exhibit showed that on March 16, 2016, around 8:15 p.m., a suspect wearing a black hooded sweatshirt and gray shoes entered a convenience store on South 24th Street in Omaha. He pulled out a black semiautomatic handgun and pointed it at two store employees while demanding money from the cash register. One of the employees pulled out his own handgun and told the suspect to drop his gun. The suspect exclaimed "'don't do it'" and began retreating toward the door. But instead of leaving, the suspect ran back toward the employee, while firing multiple shots from the handgun. One shot grazed the employee's waist. The suspect then fled the scene.

---

[1] See Neb. Rev. Stat. § 29-2204(5) (Supp. 2017).

[2] See Neb. Rev. Stat. §§ 29-1816(1)(a)(ii) and 43-246.01(3)(c) (Reissue 2016).

Later the same night around 10 o'clock, a suspect wearing a black hooded sweatshirt and gray shoes entered another Omaha convenience store, located on North 72d Street. He approached an unarmed security guard and placed a black semiautomatic handgun to the guard's face. The suspect took approximately $200 from the registers and left the store.

A Crime Stoppers tip led investigators to Hunt. After speaking with Hunt's juvenile probation officer, police learned that Hunt's electronic tracking device showed he had visited an Omaha grocery store on the evening of March 16, 2016. Video from the grocery store showed Hunt wearing a black hooded sweatshirt and gray shoes with the same markings as the shoes worn in both convenience store robberies. Police also learned that Hunt returned home from the grocery store and cut off his electronic monitoring device around 7:45 p.m. The first convenience store was robbed approximately 30 minutes later.

The second exhibit was a certified copy of Hunt's juvenile court file. That file showed that in 2015, Hunt was found to be within the meaning of Neb. Rev. Stat. § 43-247 (Cum. Supp. 2014) as a result of committing multiple armed robberies when he was 14 years old. The juvenile petition alleged that on or about July 28, 2015, Hunt committed the crimes of (1) using a deadly weapon (firearm) to commit a felony, (2) two counts of robbery, (3) two counts of attempted robbery, and (4) two counts of tampering with physical evidence. Hunt eventually admitted to one count of using a deadly weapon (firearm) to commit a felony (a Class IC felony), one count of robbery (a Class II felony), one count of attempted robbery (a Class II felony), and one count of tampering with physical evidence (a Class IV felony). One of the 2015 robberies involved the same convenience store Hunt was accused of robbing in March 2016.

The juvenile court accepted Hunt's admissions to the 2015 crimes and placed him in "shelter care" under the supervision of juvenile probation pending disposition. On December 22, 2015, Hunt was returned to his mother's home, ordered to wear

an electronic monitoring device and abide by the conditions of the "H.O.M.E." program, and ordered to participate in individual counseling and gang prevention services. On January 25, 2016, the court ordered Hunt to participate in additional counseling and treatment programs and scheduled a continued disposition hearing for June 27. But before that hearing, Hunt was arrested for the March 2016 robberies.

At the transfer hearing, Hunt offered the testimony of his juvenile probation officer, Ladonna Strong. Strong had supervised Hunt since June 2016. Strong testified that Hunt, who was being housed at the Douglas County Youth Center at the time of the transfer hearing, had been respectful, patient, open, and honest with her. According to Strong, Hunt was a member of a gang in Omaha. She suggested Hunt would benefit from a structured rehabilitative environment.

Strong testified that after the 2015 robberies but before the robbery charges in March 2016, the State sought a group home placement for Hunt given the amount of time he had spent in the Douglas County Youth Center, but Hunt was rejected by both Boys Town and Omaha Home for Boys primarily due to the serious nature of his 2015 charges. Hunt applied to a group home facility in Arizona which was willing to accept him, but he was returned home with his mother and put on electronic monitoring.

Strong testified that Hunt and his family received numerous services once Hunt returned home, including family support, gang intervention, individual and family therapy, and electronic monitoring. Hunt was ordered to participate in "pro-social activit[ies]," attend school, and attend individual and family therapy. He initially complied, but within a few weeks, he was suspended from school for fighting, began missing curfew, cut off his electronic monitoring device, and used marijuana. As a result, the State already was seeking to revoke Hunt's placement when, on March 16, 2016, Hunt cut off his electronic monitor a second time and allegedly committed the current felony offenses.

Strong testified that although Hunt had been accepted to the Arizona group home facility before his current charges, he had no pending application at the time of the transfer hearing, and there was no guarantee Hunt would be accepted into the Arizona facility again. Strong testified that the secure youth detention facility in Kearney, Nebraska, was a housing option of last resort from which Hunt could not be rejected. Strong testified the Kearney facility offered therapy and services directed to youth that she believed would benefit Hunt. But she noted that therapy and other services are also available in adult prisons.

The district court took the motion to transfer under advisement and later denied it in a written order entered September 12, 2016. In its order, the district court found that Hunt's current and prior offenses were extremely violent and aggressive and committed in a premeditated manner. It found that although Hunt was only 15 years old, he was charged with crimes of violence involving guns used to rob others, and his crimes exhibited sophistication and maturity. The district court found that Hunt was a gang member and his motivation for committing the charged offenses was self-serving. It determined that although Hunt may be amenable to treatment, there were no guarantees "or even reasonable assurances" that Hunt would be accepted into a group home setting given this was his second episode of seriously violent offenses within a 9-month period, and the court concluded that without detention and rehabilitative treatment, Hunt presented a serious risk to the community. The court also found it was in Hunt's best interests to be continued in secure detention.

Ultimately, after weighing all the statutory factors, the district court concluded Hunt "exhibited behavior . . . of being a juvenile out of control, with access to multiple hand guns willing to commit violent acts of robbery without regard for the safety and welfare of others and as a result [found Hunt] to be a danger to the community." Thus, the district court retained jurisdiction and overruled Hunt's motion to transfer.

At the time Hunt's motion to transfer was denied, such an order was not final and appealable.[3] However, we note that effective August 24, 2017, the Legislature amended the relevant statute to provide that "[a]n order granting or denying transfer of the case from county or district court to juvenile court shall be considered a final order for the purposes of appeal" and to give "any party" the right to appeal from such order within 10 days.[4]

## Plea and Sentence

Thereafter, pursuant to a plea agreement, Hunt pled no contest to an amended information charging one count of using a deadly weapon (firearm) to commit a felony (a Class IC felony), one count of robbery (a Class II felony), and one count of first degree assault (a Class II felony). The court accepted Hunt's pleas, found him guilty, and ordered a presentence investigation report.

The presentence report concluded Hunt was at a high risk to reoffend and recommended the court consider a sentence of incarceration "to promote accountability, to protect society and provide [Hunt] with any and all services deemed to be appropriate through the Douglas County Youth Center and the Nebraska Department of [Correctional Services]."

At the sentencing hearing on February 23, 2017, Hunt's counsel asked the court to consider disposition under the Nebraska Juvenile Code.[5] In support, Hunt's counsel cited Strong's testimony at the transfer hearing that Hunt would improve in a structured, secured facility geared toward youth. The attorney reminded the court about the facility in Arizona, but offered no proof the facility would still accept Hunt. Alternatively, Hunt's attorney asked the court to impose the "lowest level of incarceration" permitted for the convictions.

---

[3] See *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016).

[4] § 29-1816(3)(c) (Supp. 2017). See 2017 Neb. Laws, L.B. 11, § 1.

[5] See § 29-2204(5).

The State asked the court to impose consecutive prison terms and asked that the terms be "substantial," observing that Hunt already had "committed more violent crime in [a] few years [than] most really violent offenders do in a lifetime."

The district court denied Hunt's request for disposition under the juvenile code, reasoning that Hunt was on probation for violent armed robberies when he committed the violent crimes for which he was being sentenced, and "obviously [was] getting no benefits from the supervision of the juvenile court." The court referenced Hunt's violent criminal history and the impact of Hunt's crimes, particularly on the convenience store employee who was shot. The court expressed how difficult it was to sentence Hunt, who had turned 16 by the time of the hearing, to prison. But the court stated that after reading the presentence investigation report, it concluded Hunt was a public danger and, in order to protect the community, Hunt needed to be incarcerated "long enough [to] grow up."

The court sentenced Hunt to 15 to 20 years' imprisonment on the robbery conviction, 15 to 20 years' imprisonment on the first degree assault conviction, and 5 to 20 years' imprisonment on the conviction for use of a firearm to commit a felony. All sentences were ordered to be served consecutively. The court advised Hunt that assuming he lost no good time, he would be eligible for parole in 20 years, at the age of 36, and would be mandatorily discharged in 32½ years. Hunt timely filed this direct appeal.

## ASSIGNMENTS OF ERROR

Hunt assigns the district court erred by (1) denying his motion to transfer to juvenile court and (2) refusing his request for disposition under the Nebraska Juvenile Code and, instead, imposing excessive sentences.

## STANDARD OF REVIEW

[1,2] A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for

an abuse of discretion.[6] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[7]

[3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[8]

## ANALYSIS

### No Abuse of Discretion
### in Denying Transfer

Motions to transfer a pending criminal case to juvenile court are governed by § 29-1816(3) (Reissue 2016) and Neb. Rev. Stat. § 43-276(1) (Reissue 2016). Generally speaking, § 29-1816(3) sets forth the procedure to be followed, and § 43-276(1) enumerates the factors a court must consider when ruling on a motion to transfer, which include

(a) [t]he type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so,

---

[6] *State v. Bluett, supra* note 3.

[7] *Id.*

[8] *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017).

the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

[4] In order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor.[9] It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.[10]

[5,6] After the court considers the evidence in light of the § 43-276 factors, "the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court."[11] The court is required to "set forth findings for the reason for its decision" on the motion to transfer.[12]

[7] The burden of proving a sound basis for retention lies with the State.[13] Hunt argues that the State failed to meet its burden and that the district court abused its discretion in failing to grant the transfer. We disagree.

Summarized, the evidence at the transfer hearing showed Hunt was a gang member and had been adjudicated in 2015

---

[9] *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015).

[10] *Id.*

[11] § 29-1816(3)(a).

[12] § 29-1816(3)(b).

[13] *State v. Dominguez, supra* note 9.

for robberies involving firearms when he was 14 years old. He had been detained in the Douglas County Youth Center, placed in "shelter care," and returned home under probation supervision on electronic monitoring. Hunt had received, among other services, drug and alcohol testing, a psychological evaluation, electronic monitoring, individual and family therapy, and gang intervention services. Despite these services, Hunt was suspended from school for fighting, cut off his electronic monitoring device to avoid supervision, and used controlled substances. On March 16, 2016, Hunt cut off his electronic monitor for the second time, robbed two convenience stores at gunpoint, and shot an employee.

In its order denying Hunt's motion to transfer, the district court considered each of the applicable factors listed in § 43-276 and made specific findings. After weighing the various factors, the district court concluded there was a sound basis for retaining jurisdiction over the case and denied the motion to transfer.

[8] When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court.[14] The record in this case fully supports the reasoning of the district court, and we find no abuse of discretion in denying Hunt's motion to transfer the case to juvenile court.

## No Abuse of Discretion
### in Sentences

Hunt argues the district court abused its discretion by refusing to enter disposition under the Nebraska Juvenile Code and, instead, imposing consecutive prison sentences totaling 35 to 60 years, which he argues is excessive.

Hunt was convicted of (1) using a deadly weapon (firearm) to commit a felony, a Class IC felony punishable by

---

[14] *Id.*

imprisonment for a mandatory minimum of 5 years and a maximum of 50 years[15]; (2) robbery, a Class II felony punishable by imprisonment for 1 to 50 years[16]; and (3) first degree assault, a Class II felony punishable by imprisonment for 1 to 50 years.[17] And because Hunt was under 18 years of age when he committed his crimes, the district court had the discretion to make disposition under the Nebraska Juvenile Code:

> Except when a term of life is required by law, whenever the defendant was under eighteen years of age at the time he or she committed the crime for which he or she was convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.[18]

The district court denied Hunt's request for disposition under the juvenile code, explaining that at the time he committed the violent armed robbery for which he was being sentenced, he was under juvenile probation supervision for committing violent armed robberies in 2015 and "obviously [was] getting no benefits from the supervision of the juvenile court." Moreover, the court reasoned that due to the serious danger Hunt posed to the community, it was necessary that he be incarcerated well beyond the age of majority. We find no abuse of discretion in denying Hunt's motion for disposition under the juvenile code.

[9] Nor do we find an abuse of discretion in the sentences imposed. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as

---

[15] See Neb. Rev. Stat. §§ 28-1205(1)(c) (Reissue 2016) and 28-105(1) (Supp. 2015).

[16] See Neb. Rev. Stat. § 28-324 (Reissue 2016) and § 28-105(1).

[17] See Neb. Rev. Stat. § 28-308 (Reissue 2016) and § 28-105(1).

[18] § 29-2204(5).

any applicable legal principles in determining the sentence to be imposed.[19]

[10,11] When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[20] Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.[21] This is so even when offenses carry a mandatory minimum sentence, unless the statute requires that consecutive sentences be imposed.[22]

The sentence imposed on each of Hunt's convictions was well within the statutory limits, and the record shows the court considered and applied the necessary sentencing factors. Hunt's criminal history was significant, his crimes were violent and involved firearms, and his behavior was escalating despite the services and supervision provided in juvenile court. Moreover, Hunt's presentence report concluded he was at a high risk to reoffend. We cannot find an abuse of discretion in the sentences imposed.

## CONCLUSION

For the aforementioned reasons, the judgment of the district court is affirmed.

Affirmed.

Wright, Miller-Lerman, and Kelch, JJ., not participating.

---

[19] *State v. Stone, supra* note 8.

[20] *Id.*

[21] *Id.*

[22] *Id.*