IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


STATE V. GOUK


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DOUTH GOUK, APPELLANT.


Filed May 12, 2020.    No. A-20-051.


Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellant.

Thomas C. Riley, Douglas County Public Defender, and Lauren J. Micek for appellee.


MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Douth Gouk appeals from the amended order entered by the district court of Douglas County that denied his motion to transfer his case from district court to juvenile court. Finding no abuse of discretion, we affirm.

### BACKGROUND

On October 7, 2019, Gouk was charged in the district court with attempted robbery, a Class IIA felony, arising out of an occurrence on August 11. At the time of the offense, Gouk was 16 years 9 months old. Gouk subsequently filed a motion to transfer the case to juvenile court.

On November 14, 2019, a hearing was held on the transfer motion. Several exhibits were offered by the State and received in evidence, including records of Gouk's law enforcement contacts, Omaha Police Department incident reports regarding the charged offense, the video

- 1 -

surveillance showing the incident and a still screenshot from the video, the juvenile intake summary regarding the offense, and police reports and juvenile records regarding a previous incident. Gouk offered into evidence the deposition of Collen Conoley, Ph.D., and an article from the Office of Juvenile Justice and Delinquency Prevention from April 2000, discussing the "effective intervention for serious juvenile offenders." Gouk's co-occurring evaluation was also made part of the record. In addition, James Bankhead, a juvenile probation officer, testified on behalf of Gouk.

The police records show that on August 11, 2019, at approximately 3:26 a.m., Gouk and his codefendant, Dap Dap, accosted the victim, Shane Berman, as Berman was walking from his apartment to meet friends at a restaurant. Gouk and Dap demanded Berman's wallet and cell phone and when he refused, they assaulted him, kicking and punching him. Gouk produced a small snub nose revolver and pointed it at Berman's face. Berman continued to refuse and was assaulted further. Berman pounded on the door of the restaurant and when Berman's friends opened the door, Gouk and Dap ran away. The friends saw the two males being picked up by a vehicle, which sped away. When police officers responded to the scene, they observed significant swelling to Berman's face and the back of his head. Berman and his friends provided statements outlining the above events as well as descriptions of the two suspects.

The police were able to obtain surveillance video from the restaurant which showed the incident. The video shows Berman knocking on the door of the restaurant and Gouk coming toward Berman with a silver snub-nosed revolver in his hand, which Gouk pointed at Berman. Thereafter, Dap pushed Berman into the corner and both Dap and Gouk punched Berman repeatedly. After Berman banged on the restaurant door, Dap and Gouk fled the area on foot. Still photos of the two suspects from the video were preserved and posted on a police bulletin. Police were ultimately able to identify Gouk as one of the suspects. The still photo of Gouk shows him holding the revolver. According to the police report, Gouk was not a documented gang member, but he was Facebook friends with Dap who was a documented gang member.

Search and arrest warrants were executed at Gouk's residence and clothing items were located which were consistent with what was shown in the surveillance video. Gouk's mother also identified Gouk from the still photo.

Prior to this incident, the record shows that Gouk had multiple contacts with law enforcement. In June 2017, he was involved in a misdemeanor assault. In September 2018, he was charged with possession of marijuana, less than 1 ounce, which was later dismissed. Gouk was reported as a missing juvenile in February 2019. On July 21, he was arrested for false information, amended to obstructing an officer, which was subsequently dismissed. On July 24, Gouk was involved in a carjacking and foot pursuit with police, for which he was charged in Douglas County juvenile court with theft by unlawful taking, less than $500 (case No. JV19-1391). He was adjudicated in that case on October 7. On August 6, he was arrested in Sarpy County for theft by shoplifting, less than $500, which charge was still pending adjudication at the time of the transfer hearing.

Gouk had attendance problems and numerous suspensions from high school in the fall of 2018, and in December, he was expelled for possessing a knife. He was reportedly living "on the run" outside his parental home since early 2019.

Gouk offered the 2014 deposition of Colleen Conoley, a neuropsychologist specializing in children and adolescents. Her deposition was to be used in conjunction with several sentencing hearings for adolescents and did not specifically address Gouk. Conoley reviewed the current state of science to help inform the courts regarding the maturation process of the brain, specifically as it applies to imprisonment of juveniles. Conoley testified that adolescents experience the same basic developmental process, but outside factors such as parenting structure, learning experiences, education, environmental factors, and opportunities all impact the outcomes of the developmental process. Further, Conoley stated that biological factors are crucial, like language and intelligence capacities. Conoley opined that in order to modify the behavior of teenagers, authority figures should place positive goals in front of them to replace the thrill of risky behaviors. Conoley stated that teenagers may not have a significant meaning of life yet and that typically any plans of criminal activity are not well thought out.

Included in the record was a co-occurring (mental health and substance abuse) evaluation of Gouk completed by Jamie L. Kaipust, LICSW. Kaipust used the Comprehensive Adolescent Severity Index (C-ASI), Adolescent Substance Abuses Subtle Screening Inventory (SASSI-A2), as well as referral information and a clinical interview to assess Gouk. The SASSI-A2 indicated Gouk had a high probability of having a substance abuse disorder. While reviewing Gouk's substance use history, Kaipust noted that Gouk claimed to rarely use alcohol or marijuana and that when he had in the past he was "just having fun with friends" or that he was curious. Kaipust noted that Gouk appeared to minimize his substance abuse issues in the clinical interview. While reviewing Gouk's legal history, Kaipust noted that Gouk has a history of criminal behavior including assault, possession, theft, and robbery. Gouk denied past criminal behavior, stating that he had amnesia. When reviewing Gouk's family history, Kaipust noted that Gouk denied ever being in foster placements or placed outside the home, which conflicted with information from Gouk's mother stating that he had been placed outside of the home. Kaipust indicated that this discrepancy could be the result of a language barrier with Gouk's mother. When reviewing Gouk's psychiatric history, Gouk denied being diagnosed with any mental health disorder, despite being prescribed Prozac, which Kaipust noted is typically prescribed to treat depression or anxiety. Kaipust found that there are "many concerning discrepancies" within what Gouk reported and what was in the predisposition investigation (PDI), and that Gouk seemed to minimize potentially serious and troublesome issues. Kaipust opined that is a "great concern that [Gouk] was not forthcoming or honest throughout the evaluation" and that Gouk claimed to have amnesia several times. Kaipust reported that there is concern that Gouk may have suffered from a significant head injury that explains his poor recollection as well as flaws in judgment and insight. Kaipust diagnosed Gouk with Conduct Disorder, Adolescent-Onset type and "rule out cannabis related disorders." Among Gouk's strengths, he reported he has a child who was born in November 2019 that he is motivated to support the child. Kaipust recommended Gouk complete outpatient treatment.

Bankhead testified that he works with and supervises high-risk youth and gang youth. He explained the process of evaluating juveniles for their risk level and the services that are provided to a high-risk juvenile. These services include more intense supervision, gang intervention, family and individual therapy, family support, cognitive behavior classes, psychological/psychiatric/co-occurring evaluations, and day and evening reporting. In addition to frequent drop-ins in the

home, electronic GPS monitoring and human trackers are used. Bankhead also described various out-of-home placement options, including shelter placements, group homes, and out-of-state placements. He testified that a typical length of stay at a group home is from 8 to 18 months. If placement in a shelter or group home is not successful, a juvenile could be placed at the Youth Rehabilitation and Treatment facility in Kearney, Nebraska, or Geneva, Nebraska, which is the highest level of care. Bankhead testified that if Gouk were adjudicated in the juvenile system, he would be assigned to a high-risk gang officer.

On January 7, 2020, the district court entered its order denying the motion to transfer. The court recited the evidence as set forth above. In applying the statutory balancing test, the district court found that several factors weighed against transfer: the offense involved significant violence and was committed in a premeditated, aggressive manner, the nature of Gouk's criminal behaviors (showing an increase in the degree of violence and sophistication), the use of a gun to frighten and intimidate the victim (and the use of a gun in another crime involving Gouk), and the likelihood that there is insufficient time for the juvenile court to provide sufficient rehabilitation. The court further noted that Gouk was uncooperative during his evaluation and either denied or could not remember the events at issue, and the evaluation did not offer additional information weighing in favor of transfer to the juvenile court. The court discussed Gouk's sophistication and maturity, his home and school attendance problems, his use of marijuana, and his association with confirmed gang members, concluding that these behaviors could potentially be initially addressed with treatment in juvenile court, but can also be addressed within the adult court system over a longer period of time.

After weighing the statutory factors, the court found that "balancing the public protection and societal security against the practical and non-problematic rehabilitation of [Gouk], a conclusion to retain jurisdiction in the district court is appropriate."

Gouk timely appeals.

## ASSIGNMENTS OF ERROR

Gouk assigns that the district court erred in finding that the State established a sound basis to retain the case in district court and abused its discretion in denying his motion to transfer the case to juvenile court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Section 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in

juvenile court or in the county or district court. In the present case, the allegations against Gouk put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Reissue 2016).

In the instant case, when Gouk moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Reissue 2016):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court[.]" See § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

Following our review of the record, we can find no abuse of discretion in the district court's denial of Gouk's motion to transfer the case to juvenile court. We recognize that Gouk had not yet been afforded services in the previous juvenile court case, JV19-1391, and that there are services potentially available to him in the juvenile court arena as testified to by Bankhead. However, Gouk

has not shown a willingness to be cooperative in addressing his problems as shown by Kaipust's evaluation. Further, as noted by the district court, the seriousness of this offense, Gouk's other criminal activity, and the relatively short amount of time remaining for rehabilitation before he reaches the age of majority, weigh against removal. The district court properly weighed the statutory factors outlined above and did not abuse its discretion in denying the motion to transfer.

## CONCLUSION

We find no abuse of discretion by the district court in its denial of Gouk's motion to transfer this case to juvenile court.

AFFIRMED.