IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. BRAXTON S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRAXTON S., APPELLANT.

Filed May 11, 2021.    No. A-20-847.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Liam K. Meehan, of Wagner, Meehan & Watson, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Braxton S. appeals the Sarpy County District Court's denial of his motion to transfer his case from the district court to the juvenile court. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

In June 2020, Braxton was charged in Sarpy County District Court with robbery, a Class II felony; kidnapping, a Class II felony; and use of a firearm to commit a felony, a Class IC felony. Braxton's charges related to an alleged incident occurring on May 17, 2020, in which the victim had arranged to purchase Xanax from Braxton. Braxton arrived at a location to meet the victim in a white Jeep with two other males. Braxton and his accomplices forced the victim into the Jeep at gunpoint and drove the victim to an ATM in an attempt to force the victim to withdraw money; however, the victim had no funds to withdraw. Braxton and his accomplices then "pistol-whipped" the victim and returned to the victim's home at which time they robbed the victim of $1,000, 3

- 1 -

ounces of marijuana, and 20 Xanax pills. Following Braxton's arrest, he gave a post-*Miranda* statement in which he admitted being present during the commission of the offenses. An affidavit by an officer details Braxton's attempts to tamper with reporting parties following his arrest.

The month after being charged, Braxton filed a motion to transfer his case to the Sarpy County Juvenile Court. At the time of Braxton's alleged commission of the offenses, Braxton was 16 years old, but he had turned 17 by the date of the motion to transfer hearing. At the hearing, the State introduced 4 exhibits which were received into evidence: (1) the warrantless arrest affidavit for Braxton in the present Sarpy County case; (2) a September 2020 criminal complaint filed in the Douglas County Court wherein Braxton was charged with respect to a different robbery and the attached affidavit of the complaining witness; (3) a social media post of a photograph of Braxton holding "a bunch of money fanned out and . . . a firearm in his pocket" standing beside an unknown male; and (4) another social media post of a photograph of "Braxton holding a firearm with a collection of [monetary] bills." The exhibits established the version of facts stated earlier. Further, the affidavit included in Exhibit 2 relates to the separate robbery in Douglas County which occurred on the same day as the Sarpy County offense. In that case, the State alleged that Braxton and two other males robbed another individual at gunpoint. Braxton admitted to committing the Douglas County robbery, and a Douglas County arrest warrant remained active.

The sole witness at the hearing on the motion to transfer was Julia Evers, Braxton's probation officer. Evers testified that Braxton was previously placed on probation for a 6-month term following a November 2017 charge of theft by unlawful taking ($0 to $500). Evers testified that Braxton's original probation term had been extended several times due to subsequent law violations which included shoplifting, marijuana and paraphernalia possession, robbery, and the current charges of robbery with kidnapping and use of a firearm to commit a felony in Sarpy County and the companion robbery charge on file in Douglas County. Prior to the current charges, Braxton had been placed in a group home and, following successful completion of that placement, he was transferred to a high-risk probation officer who met with him several times per month. Notwithstanding these attempts to rehabilitate Braxton, he became involved in the current offenses. Evers testified that, if Braxton were to remain under the supervision of juvenile probation, due to the nature of the current offenses, further services would be limited to the Youth Rehabilitation and Treatment Center (YRTC) in Kearney because all other services had been exhausted. Evers further testified that the chances of Braxton being accepted to a group home with his current offenses were "very minimal." Further, although Braxton's psychological evaluation indicated diagnoses of attention deficit/hyperactivity disorder and oppositional defiant disorder, neither of these disorders were eligible for psychiatric residential treatment facility [PRTC] placement.

Braxton offered two exhibits which were received into evidence: (1) Braxton's August 2020 Psychological Evaluation Report and (2) the September 2017 Douglas County Juvenile Court adjudication order/evaluation order.

Following the hearing, the district court entered an order denying Braxton's motion to transfer. The district court's order set forth in detail the court's consideration of the factors set forth in Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2020). Due to its comprehensive nature, we set forth a substantial portion of the court's order:

**A. The type of treatment such juvenile would most likely be amenable to;**

The Court is aware of the statutory scheme, specifically Neb. Rev. Sat. § 28-105, Sections 1, 4, and 6. Pursuant to that statute, Class II felonies carry a minimum sentence of one (1) year and a maximum of fifty (50) years and a defendant may be considered for probation. Class IC felonies carry a minimum sentence of five (5) years and a maximum of fifty (50) years and runs [sic] consecutive to the predicate felony. Probation is not an option for a Class IC felony. The State did not present evidence of rehabilitation services available through the criminal justice system. Should [Braxton] remain in District Court and [if] convicted of the current charges, there is not an option where he can avail himself to the services of probation. A reduction of charges could result in [Braxton] being placed on probation and the services offered by probation.

. . . Evers . . . , a supervisor from the probation office, testified regarding services available in juvenile court and services previously offered to [Braxton]. [Braxton] originally entered juvenile court in Douglas County following adjudication for theft. Following adjudication, the Douglas County Juvenile court required [Braxton] to submit to a chemical dependency evaluation. In November 2017, the Juvenile Court placed [Braxton] on probation for six months to include GPS electronic monitoring, tracker services, day/evening reporting, and other treatment.

In March 2018, the State filed a motion to revoke [Braxton's] probation due to his arrest for shoplifting. The Juvenile Court then extended [Braxton's] probation to July 30, 2018. [Braxton] remained in his home.

On July 27, 2018, the State, again, filed a motion to revoke based on [Braxton's] arrest for marijuana possession and failure to attend his educational programming. The Juvenile Court ordered [Braxton's] probation extended for an open-ended period of time. In January 2019, the Juvenile Court extended [Braxton's] probation to address school attendance, to continue to work with EIHFT [Boys Town Ecological In-Home Family Treatment] services, to perform random UAs, to utilize EM [Electronic Monitoring] Tracker, and for [Braxton] to participate in outpatient treatment.

In March [2019], the State filed a third motion to revoke based on [Braxton's] arrest for robbery, use of a weapon (handgun) to commit a felony, and theft for unlawful taking. On March 4, 2019, the Juvenile Court detained [Braxton] at the Douglas County Youth Center and it ordered him to complete a co-occurring evaluation. Ultimately, the matter proceeded to adjudication and disposition in May 2019. The Juvenile Court noted that reasonable efforts were made to return [Braxton] to his home but had not been successful. These services included Tracker, GPS monitoring, family support services, therapy, and a chemical dependency evaluation. The Juvenile Court placed [Braxton] in a group home setting. [Braxton] successfully completed this group home setting. Probation transferred his case to a high-risk officer. The high-risk officer met with [Braxton] multiple times a month, both in and outside of his home. Evers opined that [Braxton] did well in this setting until law enforcement arrested him on the current offense(s).

Since his arrest, [Braxton] has been detained at the Juvenile Justice Center in Sarpy County where he receives supervision and education. Evers opined that few services remain in juvenile court for [Braxton]. One service that does remain is [YRTC] in Kearney,

Nebraska. This is a placement of last resort when a youth has exhausted all other services available in juvenile court. Evers stated [Braxton] has exhausted all services in juvenile court. While another group home is a possibility, it is unlikely that this would occur. On cross-examination, Evers stated that [PRTC] is also a possibility; the same is reserved for youths with suicidal or homicidal ideation. [Braxton] currently does not meet these criteria.

[Braxton's] juvenile case remains open in Douglas County, as well as the active warrant in county court for the May 2020 Douglas County robbery. The juvenile court case is unable to proceed due to [Braxton's] current case and detention in Sarpy County.

The Court acknowledges that a [PRTC] may be a service available for [Braxton]. That noted, [Braxton's] prior history shows that he is not amenable to services offered in juvenile court. He has repeatedly violated court orders, received new law violations, and has a long history of not completing services. Despite doing well in a structured setting, [Braxton] gravitates toward unlawful conduct when living at his home and/or once a structured setting is removed. He is simply not amenable to services offered in juvenile court. The Court determines this factor weighs against transfer.

**B. Whether there is evidence the alleged offense included violence;**

Both the State and [Braxton] acknowledge the alleged offense includes violence. Additionally, [Braxton] is identified as the party in possession of the handgun. This factor weighs against transfer.

**C. The motivation for the commission of the offense;**

The Court determines that [the] motivation for the offense was greed for money or property. The motive for the crime was purely self-serving and for financial gain. The parties planned, coordinated, and calculated the robbery. It was not impulsive. This factor weighs against transfer.

**D. The age of the juvenile and ages and circumstances of any others involved in the offense;**

Respectively, the individuals involved in the offense were [Braxton], Wells, and an unidentified male. Wells is an adult. It is unclear from the evidence presented whether Wells influenced [Braxton] into commission of the offenses. That noted, [Braxton] committed a prior robbery without Wells. Thus, the Court reasons that [Braxton's] culpability is at least equal to Wells[']. This factor, therefore, weighs against transfer.

**E. The previous history of the juvenile including whether he had been convicted of any previous offenses or adjudicated in juvenile court;**

As addressed in section A, the juvenile court previously adjudicated [Braxton] on charges of theft, shoplifting, marijuana possession, robbery, and use of a weapon. Ultimately, it placed [Braxton] into a group home setting. Upon release, [Braxton] continued to engage in unlawful conduct. The Court determines that given the number of offenses, and the occurrence of the offenses while under juvenile court supervision, this factor weighs against transfer.

**F. The best interests of the juvenile;**

The Court has reviewed counsels' arguments surrounding the best interests of [Braxton]. Specifically, [Braxton] cites to State v. Esai P., 28 Neb. App. 226, 942 N.W.2d 416 (2020)[,] which states ["]Every juvenile's best interests would be better served by

attempting rehabilitation in the juvenile court system rather than being sentenced to a term of imprisonment in the adult corrections system[."] The State counters with the proposition that it is in [Braxton's] best interests not to be involved in criminal activity, something he was unable to accomplish under the previous supervision of the juvenile court system. The Court agrees with and finds merit to both arguments. It therefore finds this factor neither weighs in favor of nor against transfer to juvenile court.

**G. Consideration of public safety;**

It is in the interest of public safety for [Braxton] to remain in District Court. As previously set forth, [Braxton] was a key perpetrator of a robbery wherein he brandished the firearm used in the crime. This was during a time he was under supervision of the Separate Juvenile Court of Douglas County.

As provided in State v. Hunt, the Court must weigh public protection societal security against the practical and nonproblematic rehabilitation of the juvenile. 299 Neb. 573, . . . 582, 909 N.W.2d 363, 371 (2018). In Hunt, the juvenile was charged with attempted second-degree murder, robbery, attempted robbery, and three counts of use of deadly weapon (firearm). At the time the crime was committed, the defendant was 15 years old. A motion to transfer the case to juvenile court was filed and hearing held. The State offered two exhibits, including a probable cause affidavit of the alleged crimes and a certified copy of the defendant's juvenile court file. The district court entered an order denying the transfer finding that the current offense and prior offenses were "extremely violent and aggressive and committed in a premeditated manner." Id. at 578, 909 N.W.2d at 369. Although the defendant was only 15 years old, the district court determined "he was charged with crimes of violence involving guns used to rob others, and his crimes exhibited sophistication and maturity." *Id*. Additionally, the district court held the motivation for committing the crimes was "self-serving." *Id*. On appeal, the Nebraska Supreme Court affirmed the ruling of the district court.

Similar to the factual scenario in Hunt, in this case, [Braxton] is charged with robbery and use of a firearm to commit a felony. [Braxton] planned and committed a violent crime for a self-serving purpose. Like in Hunt, the crimes committed by [Braxton] exhibit sophistication and maturity. Accordingly, giving consideration to public safety, this factor weighs against transfer.

**H. Consideration of the juvenile's ability to appreciate the nature and seriousness of his conduct;**

Dr. Morell completed a psychological evaluation of [Braxton]. . . . Dr. Morell concluded that [Braxton] was oriented to person, time, date, and place. [Braxton's] intellectual ability appears to be in the average range. Dr. Morell opined [Braxton] meets the criteria for ADHD due to his poor impulse control and inattention. [Braxton] struggles with following rules and getting along with authority figures which suggests a diagnosis of ODD. The Court's further review . . . leads it to determine [Braxton] has the ability to appreciate the nature and seriousness of his conduct. This is reinforced with the details of [Braxton's] attempts to tamper with witnesses after his incarceration. This factor weighs against transfer.

**I. Whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his minority, and if so, the available alternatives best suited to this purpose;**

If [Braxton's] case is transferred to juvenile court, it is speculative at this juncture as to whether it would be in the best interest[s] of the juvenile and public safety for him to continue in secure detention or under supervision for a period extending beyond his minority. If it were determined that [Braxton] would need to remain in secure detention or under supervision, Evers testified all court services end at the age of nineteen. Evers also testified that there is concern whether [Braxton] will become amenable to the services [the] juvenile court has to offer prior to turning 19. Evers further espoused that [Braxton's] age (now 17) controls what services could be afforded to him and most, if not all services, have been exhausted. It is also speculative whether [Braxton] would even be able to enter juvenile court given the outstanding robbery charges in Douglas County. Given this uncertainty, this factor neither weighs for, nor against, transfer.

**J. Whether the victim agrees to participate in [mediation];**

There is no evidence that the victim is interested in this factor. As such, this factor neither weighs for, nor against, transfer.

**K. Whether there is a juvenile pretrial service program established pursuant to sections 43-260.02 to 43-260.07;**

Sarpy County Diversion does not have an established pretrial diversion program for [Braxton's] offenses. This factor, therefore, weighs against transfer.

**L. Whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm;**

[Braxton's] previous adjudication in juvenile court involved robbery with the use of a firearm. This factor weighs against transfer.

**M. Whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03;**

None. This factor weighs in favor of transfer.

**N. Whether the juvenile is a criminal street gang member;**

None. This factor weighs in favor of transfer.

**O. Such other matters as the parties deem relevant to aid in the decision.**

Neither party proffered any matters in relation to this factor. Consequently, this factor neither weighs for, nor against, transfer.

**Conclusion**

In consideration of these factors, the Court concludes that it must decline [Braxton's] motion to transfer this matter to the Separate Juvenile Court. While a few factors support a decision to transfer, they are substantially outweighed by the other factors. In particular, the Court notes the violent nature of these crimes and the need to protect the public. [Braxton] is alleged to have committed these offenses during a period in which he was under the supervision of [the] juvenile court. His track record is extremely poor in prior juvenile court proceedings. [Braxton] has previously exhausted most, if not all, services offered in juvenile court. Any rehabilitative services offered by [the] juvenile court

will cease to be available within the next year and a half. Thus, it is apparent to the Court that the services offered in the juvenile court will simply be to detain [Braxton] until he ages out of the system. As such, the Court finds a sound basis for retention of the case and it, therefore, overrules [Braxton's] Motion to Transfer.

(Emphasis in original.) Braxton has timely appealed to this court.

## ASSIGNMENT OF ERROR

Revised and restated, Braxton contends that the district court abused its discretion in finding that the State met its burden of establishing a sound basis for retention of the case in the district court as a result of the court improperly balancing factors (a), (i), and (f) under § 43-276.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Motions to transfer a pending criminal case to juvenile court are governed by Neb. Rev. Stat. § 29-1816 (Cum. Supp. 2020) and § 43-276(1). Generally speaking, § 29-1816(3) sets forth the procedure to be followed, and § 43-276(1) enumerates the factors a court must consider when ruling on a motion to transfer, which include:

(a) [t]he type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The Nebraska Supreme Court in *State v. Hunt*, 299 Neb. at 582, 909 N.W.2d at 371, explained:

In order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.

After the court considers the evidence in light of the § 43-276 factors, "the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." [§ 29-1816(3)(a).] The court is required to "set forth findings for the reason for its decision" on the motion to transfer. [§ 29-1816(3)(b).]

The burden of proving a sound basis for retention lies with the State.

Braxton argues the district court performed an improper balancing analysis as a result of erroneous conclusion related to the factors listed in § 43-276(1)(a), (i), and (f). Specifically, Braxton argues these factors should have weighed in favor of transfer and the district court's findings in connection with these factors erroneously tipped the scale in favor of retention of his case in the district court. We analyze these factors independently and then analyze the court's ultimate conclusion as it relates to all such factors.

Factor (a) of § 43-276(1) addresses the type of treatment the juvenile would most likely be amenable to. The district court's order set out a detailed analysis describing why this factor supported retaining Braxton's case in the district court. In sum, the court reasoned that Braxton has already received services through the juvenile court including a chemical dependency evaluation, a co-occurring evaluation, GPS electronic monitoring, tracker services, family support services, therapy, day/evening reporting, random urinalysis testing, and outpatient treatment. However, as the court surmised, notwithstanding these extensive attempts by the State to rehabilitate Braxton, his criminal activity has continued to escalate. As it relates to Braxton's amenability to future rehabilitative treatment, Braxton appears to argue that, because Evers testified that Braxton may qualify for further services at YRTC and because the State failed to propound evidence governing available services in adult court for comparative purposes, the district court erred in finding this factor favored retention in the district court. We disagree.

Although Braxton may qualify for admittance to YRTC, this factor relates to his amenability to such services provided there, not simply whether Braxton qualified for admission. Because the record reflects that Braxton has refused to conform his conduct so as to avoid dangerous criminal behavior despite the numerous repeated attempts by the State to rehabilitate him--attempts Evers testified the State had exhausted--we cannot say the district court erred in concluding Braxton was not amenable to further services. Nor do we find the State was compelled to propound evidence of comparative adult court services in order to conclude Braxton was not amenable to further juvenile-related services. The district court properly determined that this factor supported retention in district court.

Braxton next argues that the court erred in finding that factors (i) and (f) of § 43-276(1) were neutral factors and should have found these factors favored transferring his case to the juvenile court. But without specifically addressing the court's reasoning in connection with these individual factors which we set forth in detail before, we approach Braxton's assigned error with a broader view. That is, whether the district court's determination that factors (i) and (f) were

neutral rather than favoring transfer could in any way shift the balancing analysis here. We find that it does not. As the Nebraska Supreme Court stated in *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018), the district court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. It is a balancing test by which the public protection and societal security are weighted against the practical and nonproblematical rehabilitation of the juvenile. *Id*. The burden of proving a sound basis for retention lies with the State. *Id*.

After reviewing this record in its entirety, we find that, even if the district court were to find these individual factors weighed in favor of transfer, the court did not err in performing its ultimate balancing analysis here. Due to the extensive and violent nature of Braxton's prior criminal conduct, his defiance of court orders, his lack of amenability to extensive rehabilitation efforts, his advanced age, and his current pattern of escalated behavior, we hold the district court did not err in finding that the need for public protection and societal security outweighed the practical and nonproblematical rehabilitation of Braxton. Consequently, we hold that the district court did not abuse its discretion in denying Braxton's motion to transfer and retaining jurisdiction in the district court.

CONCLUSION

Having determined that the district court did not abuse its discretion in denying Braxton's motion to transfer his case to the juvenile court, the district court's order is affirmed.

AFFIRMED.