Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/24/2021 08:08 AM CDT

State of Nebraska, appellee,
v. Montrell T. Burris,
appellant.

___ N.W.2d ___

Filed August 17, 2021.    No. A-21-218.

1. **Criminal Law: Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion.
2. **Courts: Juvenile Courts: Jurisdiction: Evidence.** When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court.
3. **Criminal Law: Courts: Juvenile Courts: Jurisdiction.** A juvenile court has concurrent jurisdiction over a person charged in the district court who is 17 years of age when the allegedly committed acts constitute Class II and IIA felonies and who has not yet reached the age of majority during the course of the proceedings requesting transfer from the district court to the juvenile court.

Appeal from the District Court for Buffalo County: Ryan C. Carson, Judge. Affirmed.

Brandon J. Dugan, Deputy Buffalo County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Moore, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Montrell T. Burris appeals the order of the district court for Buffalo County that denied his motion to transfer his case to the juvenile court. We affirm.

## BACKGROUND

Burris was born in November 2002. On July 3, 2020, while residing at the Youth Rehabilitation Treatment Center (YRTC) in Kearney, Nebraska, Burris attacked staff members on two different occasions. In one of the attacks, he used a "shiv" that he had whittled from a toothbrush handle. On both occasions, he punched and kicked staff members. He was charged with use of a deadly weapon to commit a felony, a Class II felony, and second degree assault, a Class IIA felony. He was bound over to district court, and after being arraigned, he filed a motion to transfer the case to juvenile court on January 12, 2021.

At the hearing on the motion to transfer, three witnesses testified on behalf of the State. Brent Janzen is a juvenile probation officer in Douglas County who was assigned Burris' case in May 2018. The charges against Burris at that time were terroristic threats and disorderly conduct arising out of two separate incidents. The terroristic threats charge arose out of an incident with Burris' mother in which he threatened to cause damage to the home or kill her. Janzen was unable to recall the details of the disorderly conduct claim. As a result of these incidents, Burris was placed on probation and was monitored with "GPS and tracking services." He had in-home multiple systemic therapy with daily reporting. He was also provided psychological evaluations, outpatient counseling, medication management, and "gang intervention."

The services were unsuccessful, and due to curfew and drug violations, Burris' probation was revoked. He was initially placed at a youth shelter in November 2018. He was removed from there on December 21 and placed at a youth detention center. From there, he was placed at an out-of-state

group home on February 22, 2019. He remained at the group home until June, at which time he absconded. He was returned to the youth detention center for several months and then was released home to his mother in October. Following his return home, he continued to violate the terms of his probation, including possession of BB guns and continued substance abuse. Consequently, he was placed at the YRTC in Kearney on March 9, 2020.

After Burris was placed at the YRTC, he had multiple instances of physical aggression toward staff. Janzen testified that he was concerned about medication management, because he had witnessed instances of compliance with medication and noncompliance without it. Oftentimes, Burris would refuse his medication, so in July 2020, after the current offenses, his method of medication was changed from oral administration to monthly injections. On October 15, following successful completion of the YRTC program, Burris was returned home. Janzen continued to be his probation officer and worked with Burris on a reentry plan that included primarily medication management, along with individual outpatient therapy, family support, and electronic monitoring. Although Janzen had concerns following Burris' release from the YRTC, he testified none of them came to fruition. Burris successfully completed probation on January 20, 2021.

Janzen admitted at the time of the transfer hearing that Burris was over the age of 18. He testified that there would still be some services available to him such as electronic monitoring, "GPS tracking," and individual therapy services. The only new service would be victim offender mediation.

Paul Gordon is the facility administrator at the YRTC. He verified that in Burris' initial assessment, Burris admitted to being a member of a specific gang. Gordon testified that he has to "sign off" on every major violation that occurs at the YRTC; therefore, he was familiar with Burris' assaults on staff. Burris' first major violation was on March 17, 2020, and was a staff assault. There was another one the next day, and several

others in the following months. On July 3, Burris assaulted a staff member with a shiv. Due to the manner in which the assaults were escalating, the staff decided Burris needed stabilization on medication. Once that was accomplished in July, Gordon saw a consistent change in Burris, who had only one subsequent staff assault.

Gordon confirmed that the maximum age at the YRTC is a person's "19th birthday." He further stated that Burris did not seem like the same person when he was released from the YRTC; he seemed more "positive" and able to deal with his anger.

A state trooper testified that the YRTC notified him on July 3, 2020, that Burris committed an assault on a staff member at about 8 a.m. and another assault just after noon. The state trooper was also provided two shivs that had been used in the assaults. He interviewed the first staff member, who told him that just after 8 a.m., he and another staff member went to deliver toilet paper to Burris, who then forced open his door, made a stabbing motion at the first staff member, and punched him in the face. The first staff member had some minor injuries on his face, a 4-inch red mark on the right side of his chest, and two small scrapes on his left pectoral muscle.

Burris' mother testified on his behalf. She explained that she initially made contact with the juvenile system for the terroristic threats Burris made because she was trying to get help for her family. She "knew he had mental conditions and [she] knew [they] needed help as a family." She explained that Burris was originally placed on medication for attention deficit hyeractivity disorder at age 15. Once the court got involved, a doctor prescribed a different medication; then, after Burris went to the YRTC, he was prescribed a third medication.

According to Burris' mother, Burris is completely different when taking the third medication. He continues to communicate with his counselor, although the services were terminated once probation was ended. She testified the counselor expressed

that he is available if Burris needs him, but that there is currently no need for his services. Burris continues to attend school and has an individualized education plan. Through that plan, he receives anger management therapy; however, with the medication, Burris' mother does not see anger issues any more. She denied Burris was involved in a gang and said it was a "surprise" to her that it was indicated on his assessment.

Following a hearing, the district court entered a written order in which it analyzed each of the factors set forth in Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2020) and overruled the motion to transfer. It found, rephrased, as follows:

(1) *The type of treatment the juvenile would most likely be amenable to*: A number of services available in juvenile probation have already been provided to Burris, including home therapy, psychological and mental health services, electronic monitoring, educational services, community-based services, and group home care. Burris struggled to comply with court orders, abide by curfews, and provide negative drug tests. He was ultimately placed at the YRTC, where his behaviors continued. This factor weighed in favor of retaining jurisdiction.

(2) *Whether there is evidence that the alleged offense included violence*: Burris carved two toothbrush handles into shivs, which he attempted to use during assaults on staff members on two separate occasions on July 3, 2020. During both assaults, he punched and kicked the staff members. This factor weighed in favor of retention.

(3) *Motivation for the commission of the offense*: Burris' motivation for the commission of the offenses is unknown, but he previously engaged in similar assaultive behavior and was initially placed on juvenile probation as a result of terroristic threats against his mother and disorderly conduct in March 2018. The court recognized, however, that Burris suffers from mental health issues and has been diagnosed with disruptive mood dysregulation disorder, attention deficit hyperactivity disorder, and conduct disorder, which may have driven his actions. Burris refused to take medication for these diagnoses

until after this incident and is now doing monthly injections. This factor favors retention.

(4) *Age of defendant*: At the time of the assaults, Burris was 17 years old, but at the time of the transfer hearing, he was 18 years old. Because Burris would reach the age of majority shortly, this factor weighed in favor of retention.

(5) *Previous history*: Burris has prior terroristic threats and disorderly conduct charges in juvenile court and prior assaults on staff members at the YRTC. This weighed in favor of retention.

(6) *Best interests of juvenile*: Burris successfully completed programming at the YRTC, was discharged from juvenile probation, and has maintained compliance with his medication. This weighed in favor of transfer, although a longer period of time to work with him and provide more services would be beneficial.

(7) *Consideration of public safety*: Due to the making of weapons and Burris' prior violent behavior, the court found this weighed in favor of retention.

(8) *Ability to appreciate the nature and seriousness of his conduct*: Because Burris recognized and appreciated the nature and seriousness of his actions, the court found this weighed in favor of transfer.

(9) *Best interests of juvenile and security of public requiring detention or supervision for period extending beyond minority*: Because of the seriousness of the charges, Burris will likely require detention or services beyond the age of majority; therefore, this weighed in favor of retaining jurisdiction.

(10) *Mediation*: Burris would be willing to participate in mediation; therefore, this weighed in favor of transfer.

(11) *Pretrial diversion program*: No evidence was presented on this factor, but the court found it unlikely that Burris would qualify; therefore, this factor weighed in favor of retention.

(12) *Firearm*: Burris had no prior convictions for use of a firearm. This factor favored a transfer.

(13) *Juvenile court order pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016)*: No evidence was presented on this factor; therefore, it was neutral.

(14) *Gang member*: The evidence was unclear on this issue. There was testimony that he was and that he was not a gang member. Therefore this factor was neutral.

## ASSIGNMENT OF ERROR

Burris assigns that the district court erred in denying his motion to transfer his case to the juvenile court.

## STANDARD OF REVIEW

[1] A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Motions to transfer a pending criminal case to juvenile court are governed by Neb. Rev. Stat. § 29-1816 (Cum. Supp. 2020) and § 43-276(1). Generally speaking, § 29-1816(3) sets forth the procedure to be followed, and § 43-276(1) enumerates the factors a court must consider when ruling on a motion to transfer, which include:

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of

public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

After considering all the evidence and reasons presented by both parties, a case shall be transferred to juvenile court unless a sound basis exists for retaining the case in district court. See § 29-1816(3)(a). As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

Burris was charged with use of a deadly weapon to commit a felony, a Class II felony, and second degree assault, a Class IIA felony, arising out of alleged incidents occurring at the YRTC on or around July 3, 2020. At the time of the

assaults, he was 17 years old, and at the time of the transfer hearing, he was 18 years old. Burris argues that the district court did not have a sound reason for retaining jurisdiction, relying primarily upon the facts that he has completed the program at the YRTC and has been successfully discharged from probation. He claims these programs addressed his treatment needs and that the limited juvenile services still available to him would be sufficient.

The record reveals that Burris was initially noncompliant with his medication, leading to the decision that it be changed and administered via monthly injection. Since that change, Burris' behavior appears to have improved. Nonetheless, when weighing the factors of § 43-276(1), the district court concluded that a sound basis existed for retaining jurisdiction. We agree.

[2] It is undisputed that Burris' attacks on the staff members involved violence and that given his age, he would be under the jurisdiction of the juvenile court for a very short period of time. At the time of the attacks, he had been provided virtually all of the offered juvenile court services, to no avail. Burris had a long history of violence, as evidenced by his initial commitment to the YRTC and his record of violations while there. Although we are mindful of the effect Burris' medication change has had, when a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. See *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

The district court set forth a detailed analysis of each of the factors contained in § 43-276(1), and we find no abuse of discretion in denying Burris' motion to transfer the case to juvenile court. Given Burris' age, a transfer to the juvenile court at this point would provide little to no services being offered to Burris. And given the nature of the offenses and Burris' long history of noncompliance, we cannot say that the minimal services available through the juvenile court would

be sufficient. Therefore, the district court had a sound basis for retaining jurisdiction.

Relying upon § 43-276(2) and the definition of the term "juvenile" contained in Neb. Rev. Stat. § 43-245(11) (Cum. Supp. 2020), the State argues in its brief that the district court did not err in denying the motion to transfer because at the time the motion was filed, the juvenile court would not have jurisdiction over Burris who had already turned 18 years old. The State did not present this argument to the district court; however, because it presents a question of jurisdiction that may be raised at any time, we address the State's argument. See *State v. Parks*, 282 Neb. 454, 803 N.W.2d 761 (2011).

The essence of the State's argument is that § 43-276(2) grants a juvenile court jurisdiction over any juvenile who commits a felony and who was at least 11 years old at the time the act was committed. Section 43-245(11) defines a juvenile as "any person under the age of eighteen." Therefore, according to the State, the juvenile court's jurisdiction is limited to persons who commit a felony and are 11 to 17 years old. We disagree.

Neb. Rev. Stat. § 43-247(2) (Reissue 2016) grants jurisdiction to the juvenile court over any juvenile who committed a felonious act and who was 11 years of age or older at the time the act was committed. Subsection (12) of § 43-247 also grants continuing jurisdiction to the juvenile court until that individual reaches the age of majority. Neb. Rev. Stat. § 43-246.01(3)(c) (Reissue 2016) grants concurrent jurisdiction to the district court and the juvenile court as to any juvenile described in § 29-1816(1)(a)(ii), which section includes an "accused [who was] younger than eighteen years of age and [who was] fourteen years of age or older when an alleged offense punishable as a Class I, IA, IB, IC, ID, II, or IIA felony was committed." Likewise, § 29-1816(2) requires that the trial court advise a defendant "if the accused was younger than eighteen years of age at the time the alleged offense was committed" that the

accused may move to have the case transferred to the juvenile court for further proceedings.

[3] When read together, these statutes support a determination that the juvenile court had concurrent jurisdiction over Burris at the time the motion to transfer was filed. Burris was 17 years of age when he allegedly committed the acts which constitute Class II and IIA felonies. He had not yet reached the age of majority during the course of the proceedings. See § 43-245(2). Therefore, we reject the State's argument that the juvenile court was without jurisdiction to accept a transfer of Burris' case.

## CONCLUSION

Finding no abuse of discretion in the district court's order denying the motion to transfer, we affirm.

AFFIRMED.