IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ROGERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LESHAWN C. ROGERS II, APPELLANT.

Filed February 21, 2023.    No. A-22-713.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Amanda R. Baskin for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman and Braden Dvorak, Senior Certified Law Student, for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Leshawn C. Rogers II appeals from an order of the Lancaster County District Court denying his request to transfer his case to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

## II. BACKGROUND

On July 13, 2022, the State filed an information charging Rogers with discharging a firearm near a vehicle or building, in violation of Neb. Rev. Stat. § 28-1212.04 (Reissue 2016), a Class IC felony; second degree assault, in violation of Neb. Rev. Stat. § 28-309 (Reissue 2016), a Class IIA felony; and use of a firearm to commit a felony, in violation of Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016), a Class IC felony. The information indicated that the event which gave rise to the

- 1 -

charges occurred in May 2022. In May 2022, Rogers was 15 years 9 months old. He was born in August 2006.

On July 20, 2022, Rogers filed a motion to transfer the matter from district court to juvenile court under Neb. Rev. Stat. § 29-1816 (Cum. Supp. 2022). A juvenile transfer hearing was held on August 31. During this hearing, the State offered seven exhibits into evidence, including, the police reports which gave rise to Rogers' charges; photographs taken during the investigation; the transcript from the preliminary hearing on Rogers' charges held in June 2022; and a predisposition evaluation completed on Rogers in February 2022 as part of prior juvenile court proceedings.

The police reports and transcript from the preliminary hearing indicate that on May 25, 2022, E.P. and his friends had arranged to buy some "vape cartridges" from another juvenile. E.P. and his friends were between the ages of 12 and 14 years old. When the group went to the arranged location to complete the purchase, a red sports utility vehicle arrived with seven people inside. One of the passengers robbed E.P. and his friends of the money intended to purchase the vape cartridges. E.P. returned to his home where he reported these events to his 16 year old brother, O.P.

O.P. relayed the story of E.P. being robbed to O.P.'s friend, E.H., who was 17 years old. O.P. and E.H. then initiated contact with the person who was supposed to sell the vape cartridges to E.P. using social media. This contact continued until E.H. and O.P. encouraged the seller and his group of friends to meet them at Seacrest Field, near Lincoln East High School in Lincoln, Nebraska. E.H. and O.P. arrived at Seacrest Field in O.P.'s green pickup truck. They then observed a red sports utility vehicle with at least four people inside arrive at the field. E.H. got out of the pickup truck and was confronted by two girls who got out of the red sports utility vehicle. The girls began hitting E.H. As he retreated from the assault, a Hispanic male got out of the red sports utility vehicle and brandished a silver and black handgun. E.H. observed the male with the gun to have sideburns and long hair and to be wearing a white ski mask over his face. As E.H. got back into the pickup truck after observing the gun, O.P. began driving away from the scene. As he was driving, the window of the truck was struck with a bullet. E.H. was then struck in the face with another bullet. O.P. drove E.H. to a nearby hospital.

At the hospital, it was discovered that E.H. had a six-inch "graze mark" from the bullet on his left cheek. The bullet went through the bottom portion of his left ear. He required reconstructive surgery to repair the damage to his ear.

During law enforcement's investigation of the shooting, they learned that there were seven individuals in the red sports utility vehicle. One of those individuals was identified as Rogers. Through interviews with those present, law enforcement eventually identified Rogers as the likely shooter. A search of Rogers' home revealed a white ski mask in Rogers' bedroom. In addition, numerous baggies containing marijuana and marijuana vape cartridges were located. Law enforcement also found a silver and black handgun which had previously been reported as stolen from Marshalltown, Iowa. The magazine for the handgun contained the same ammunition that was found by law enforcement at Seacrest Field. Rogers was arrested, and declined to make any statement to law enforcement. A subsequent search of Rogers' social media accounts revealed that in April 2022, he posted a photograph of himself holding a black and silver handgun. He also posted photographs of marijuana and statements about robbing someone during a drug deal.

At the time of the May 25, 2022 shooting, Rogers was on probation after being adjudicated in the juvenile court pursuant to Neb. Rev. Stat. § 43-247(1) (Reissue 2016) on January 27, 2022. The adjudication was the result of an incident which occurred on December 1, 2021, at Rogers' school. On that date, a classmate of Rogers was sitting at a desk in a classroom when Rogers and another classmate entered the room and began to attack him. The classmate accompanying Rogers hit the victim on the right side of his head with a closed fist, causing the victim to fall from his desk to the floor. Once the victim was on the floor, Rogers started punching and kicking the victim repeatedly. Rogers also used a chair to strike the victim. When teachers attempted to intervene and end the assault, Rogers threatened to physically harm them. He also told the victim, "You're lucky these teachers are here, otherwise we'd kill you." During the adjudication proceedings, Rogers admitted to assaulting his classmate:

> So it was me. I walked in, boom, hit him, he drops down and we started kicking him. Teacher comes at me, and I shake the teacher off to get back to the kid. And that's all I remember. Happened in the morning, at lunch. [Another student] was with me. We had seen him in his class and got mad, I was so angry I did not remember. I really did not plan for it to go that far, but it happened and it's over with.

After Rogers was adjudicated to be within the meaning of § 43-247(1), a predisposition investigation was conducted by the probation office in February 2022. That report revealed that, at the time of his offense in December 2021, Rogers was a tenth grade student at Lincoln Southeast High School. Rogers' father was incarcerated at the Tecumseh State Correctional Institution, so Rogers resided with his mother and his two younger siblings. Prior to his father becoming incarcerated, Rogers witnessed domestic violence between his parents.

The report also revealed that the December 2021 incident is not the first time that Rogers has acted out or shown aggression at school. He has a lengthy history of disciplinary intervention at school, dating back to his time in elementary school. In recent years, Rogers' attendance at school has been a concern. In addition, in November 2019, Rogers was cited for disturbing the peace after engaging in a verbal argument at school. In February 2020, he was cited for possessing narcotics at school. During his interview with probation, Rogers described himself as having a quick temper and becoming frustrated easily. He and his mother both indicated that he has a lack of remorse for his bad actions and does not often accept responsibility for his behavior. In particular, Rogers informed the probation officer that he does not feel bad for the classmate he assaulted, because he believes that the assault was deserved.

Rogers admitted to experimenting with marijuana, alcohol, nicotine, and Xanax. In October 2021, Rogers attempted suicide by overdosing on Xanax. However, he denied any use of drugs or alcohol in February 2022, when the predisposition investigation was conducted.

Ultimately, the juvenile court placed Rogers on probation for a period of eight months, beginning on March 2, 2022. A motion to revoke his probation as a result of the shooting in May was filed on May 31.

During its case-in-chief, the State called Martin Jensen to testify regarding Rogers' short time on juvenile probation. Jensen supervised the probation officer who was assigned to Rogers. From March through May 2022, Rogers was offered family support to improve his school attendance and to help him find employment. Jensen indicated that Rogers missed approximately

50 percent of his appointments with the family support worker, but admitted that some of Rogers' poor attendance may have been due to miscommunications rather than any intent by Rogers to evade the appointments. Rogers' attendance at school did not improve. Rogers did attend three or four scheduled meetings with his probation officer during the approximately 60 days he was on probation.

Jensen testified that if Rogers' current criminal proceedings were transferred to juvenile court, there are other services that would be available to him. Such services include, electronic GPS monitoring, mentoring, multi-systematic therapy, alcohol monitoring, mediation with the victim, and placement at either the Youth Rehabilitation and Treatment Center in Kearney or at a psychiatric residential treatment facility. Jensen did note that it was unlikely that Rogers could be placed at a psychiatric residential treatment facility given that his charges involve use or possession of a firearm. Jensen did testify that any supervision by the juvenile court would end once Rogers reaches the age of 19 in August 2025.

After the State rested, Rogers offered the testimony of his mother, Damaris Hernandez. Hernandez testified that in May 2022, she was working overnight five nights per week. She was the only adult residing in her home with Rogers and her two younger children, aged 11 years old and 9 years old. Hernandez relied on Rogers to help care for his younger siblings. Hernandez indicated that she currently has plans to move in with her mother, the children's grandmother, so that she has someone to assist her in supervising the children.

Hernandez believed that Rogers had attempted to comply with his juvenile probation order but admitted that she was not very involved in Rogers' meetings with his family support worker and that during probation Rogers continued to struggle with attending school regularly. Hernandez testified that Rogers mostly stayed in his room and played video games when he was at home. She observed no signs of violence from him. However, Hernandez admitted that she was completely unaware that Rogers had a gun in her home or that he possessed large quantities of marijuana.

Hernandez testified that both she and Rogers would do anything the juvenile court may require of Rogers as part of a rehabilitation plan. She believed that even though Rogers has only "experimented with" substances such as alcohol, marijuana, and Xanax, that he would be willing to seek treatment for substance abuse. She also indicated that Rogers may benefit from mental health treatment given trauma he has experienced in his past. Hernandez indicated that she would continue to work with Rogers to ensure he is openly communicating with her about his struggles.

In addition to the testimony of Hernandez, Rogers offered into evidence photographs of messages sent from E.H. and O.P. antagonizing Rogers' group of friends and encouraging them to come fight. The State and Rogers entered into evidence a joint stipulation indicating, among other things, that Rogers was not a known criminal street gang member.

After the hearing, the district court entered a detailed order overruling Rogers' motion to transfer the case to juvenile court. The district court found that the State had met its burden of proof, explaining: "In applying the balancing test . . . where public protection and societal security are weighed against practical and not problematical rehabilitation of the juvenile, the court finds, in the instant case, that a sound basis does exist for this court to maintain jurisdiction over this case." The details of the district court's consideration of the transfer factors contained in Neb. Rev. Stat. § 43-276 (Supp. 2019) will be provided in our analysis below.

Rogers appeals the denial of his request to transfer the case to the juvenile court.

- 4 -

## III. ASSIGNMENT OF ERROR

Rogers assigns as error that the district court abused its discretion in denying his motion to transfer to the juvenile court.

## IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. JURISDICTION

When a juvenile seeks to transfer a criminal case from adult court to juvenile court, § 29-1816(3)(c) provides that "[a]n order granting or denying transfer of the case from county or district court to juvenile court shall be considered a final order for the purposes of appeal." The statute further states that, upon entry of such an order, "any party may appeal to the Court of Appeals within ten days." On September 21, 2022, the district court entered an order denying Rogers' motion to transfer his case to juvenile court, and Rogers filed his notice of appeal on September 27; his appeal is timely.

### 2. LEGAL FRAMEWORK

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the allegations against Rogers put him within the latter category of juvenile offenders, and the State filed the charges against Rogers in the district court.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to § 29-1816(3).

In the instant case, when Rogers moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period

extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

### 3. WAS DENIAL OF TRANSFER ABUSE OF DISCRETION?

In his brief on appeal, Rogers alleges that the district court abused its discretion in analyzing the relevant statutory factors delineated in § 43-276(1). Rogers believes that the district court's errors, "especially when considered in their totality, amount to an abuse of discretion." Brief for appellant at 16. To the contrary, the State contends that the district court carefully considered the evidence presented at the transfer hearing in light of the § 43-276 factors and that its decision to retain jurisdiction was supported by appropriate evidence. Ultimately, we agree with the State that the district court did not abuse its discretion in retaining jurisdiction over the case. In our analysis, we review the district court's analysis as to each statutory factor.

### (a). Factors Favoring Retention

In its September 2022 order, the district court addressed each of the factors contained in § 43-276(1). While it did not specifically identify each factor as favoring retention or transfer, we can readily surmise such from the context of the court's analysis of each factor. The district court appears to have found the following factors favored retention in the district court.

Under § 43-276(1)(a), the type of treatment Rogers would be amenable to, the district court found:

> [A]lthough there may be programs that [Rogers] could participate in [through the juvenile court], the history of [Rogers] shows the unlikely chance that he would participate, and even if he did, the juvenile court could only have jurisdiction over him, until the age of 19, which would only last for an additional 3 or so years.

In reaching its finding, the district court noted that Rogers was on juvenile probation at the time of the May 2022 shooting and that such probation had not stopped Rogers from continuing to engage in criminal behavior, including, being in possession of controlled substances and firearms.

Under § 43-276(1)(b), whether the alleged offense included violence, the district court found that, "[c]learly, the offense included violence," as the charges against Rogers alleged, among other things, that he had shot the victim in the face.

Under § 43-276(1)(c), the motivation for the offense, the district court found that Rogers' motivation appeared to have been "greed and self-aggrandizement." The court described the evidence which demonstrated that Rogers shot the victim while he was retreating from the confrontation related to the earlier drug deal. In addition, the court pointed to evidence which showed that in the weeks leading up to the shooting, Rogers had used his social media accounts to brag about robbing people during drug deals and to post pictures of himself brandishing a gun. The court concluded:

> This factor weighs in favor of retaining the case in district court due to [Rogers] continuing to participate in violative and illegal activity while on juvenile probation, and of such a nature that is violent and dangerous and not indicative of someone who can be managed by the services of juvenile court.

Under § 43-276(1)(d), the age of the juvenile offender and of others involved in the offense, the district court noted that Rogers was 15 years old at the time of the May 2022 shooting, but had turned 16 years old by the time of the transfer hearing. The court explained its concern that the juvenile court would only have three years to work with Rogers before losing jurisdiction. The court noted that the other juveniles involved in the shooting were approximately Rogers' same age.

Under § 43-276(1)(e), the previous history of the juvenile offender, the court found that Rogers had a fairly significant criminal history given his age. As we discussed above, Rogers had been adjudicated in the juvenile court a few months prior to the May 2022 shooting after having seriously assaulted another student in his high school. The school resource officer had reported that this assault was the most violent attack he had ever seen at the school. The district court also noted that, in addition to that assault, Rogers "had numerous [other] violent incidents with students, staff, and teachers at school, and in fact had to go to an alternative school, and that schedule was even reduced, because he wouldn't attend."

Under § 43-276(1)(g), consideration of public safety, the district court found, "[g]iven the evidence of his violent and assaultive behavior in the school system, as well as the allegations and evidence in this case, public safety is a factor that cuts against [Rogers]." Similarly, the district court found that § 43-276(1)(h) and (i) weighed in favor of retaining the case in the district court. As to (h), consideration of the juvenile offender's ability to appreciate the nature and seriousness of his conduct, the district court indicated that the evidence presented at the transfer hearing "tend[ed] to show [Rogers'] callousness for the ones that he hurts or disrespects, and although he may accept responsibility, he believes he is justified in his actions." As to (i), whether the best interests of the juvenile offender and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his minority, the court explicitly found, "[t]here was no evidence presented that would indicate that [Rogers] will

not need treatment beyond his minority." The district court expressed its concerns that the juvenile court would only have, at most, three years to work with Rogers. The district court, on the other hand, simply did not have that same time constraint.

Under § 43-276(1)(l), whether the juvenile offender has been convicted of or has acknowledged unauthorized use or possession of a firearm, the district court found that while Rogers had not been convicted of a crime involving a firearm, that the circumstances surrounding the current charges as well as Rogers' social media posts indicate that Rogers has been in possession of a firearm.

## (b) Factor Favoring Transfer

The district court noted in its order that there was no evidence that Rogers was a member of a criminal street gang pursuant to § 43-276(1)(n). Presumably such finding was based on the stipulation between the State and Rogers that Rogers was not a known or documented member of a street gang. This factor then appears to weigh in favor of transfer to the juvenile court.

## (c) Neutral Factors

The district court identified § 43-276(1)(f), the best interests of the juvenile offender, as "cut[ting] both ways for" Rogers. Specifically, the court indicated, "[t]he evidence was that his best interests indicate that he participates in treatment, however the length or efficacy of that treatment cannot be ascertained definitively."

The district court found § 43-276(1)(j), whether the victim or the juvenile agree to participate in restorative justice, to be a neutral factor, as it was clear that the victim had no desire to participate with Rogers in a restorative justice program, despite any such desire by Rogers. Similarly, the court found § 43-276(1)(k), whether there is a juvenile pretrial diversion program available, and (m), whether a juvenile court order has been issued for the juvenile pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016), to be neutral factors, as no evidence was adduced as to these issues.

Finally, as to § 43-276(1)(o), other matters as are relevant to the decision whether to transfer, the district court explicitly indicated that it had considered the intent of the Nebraska Juvenile Code to remove juveniles from the criminal justice system whenever possible. However, the court also noted that it must consider the seriousness of the offense alleged in this case.

## (d) No Abuse of Discretion

Although the district court's analysis of the factors under § 43-276(1) reveals only one factor favoring transfer to the juvenile court, there is no arithmetical computation or formula required in a court's consideration of the statutory criteria or factors. *State v. Esai P.*, 28 Neb. App. 226, 942 N.W.2d 416 (2020). There are no weighted factors, that is, no prescribed method by which more or less weight is assigned to each factor specified by statute. *Id*. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id*. "This means that a trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's safety in the event that rehabilitation fails or requires more time than anticipated." *State v. Leroux*, 26 Neb. App. 76, 118, 916 N.W.2d 903, 929 (2018).

As we often state in our review of juvenile transfer cases, these are difficult decisions for the trial court and for this court on appeal because of the young age of the defendants. However, a young age by itself does not support a transfer to the juvenile court. See *State v. Esai P., supra* (setting forth cases of defendants as young as 14 or 15 years of age in which criminal proceedings were retained in district court because factors favoring public protection outweighed juvenile's young age, such as involvement with gangs and guns, violent nature of crime, or unlikely success of rehabilitation before juvenile reaches age of majority).

In his brief on appeal, Rogers argues that, in performing its balancing analysis, the district court made several factual errors. First, he asserts that the district court erred in finding that he would not participate in programs offered to him as part of juvenile probation. Upon our review of the record, we cannot say that the district court abused its discretion in so finding. The evidence presented at the transfer hearing revealed that Rogers was placed on juvenile probation in March 2022 after being adjudicated for assaulting and seriously injuring a fellow classmate. During the next two months, Rogers continued to engage in illegal and inappropriate behaviors, including, being involved in drug transactions; posting to social media about robbing individuals during drug transactions; posting photographs to social media depicting him with a firearm; failing to attend school on a regular basis; and failing to regularly meet with his family support worker. Such behavior culminated with the current offense on May 25. Given this evidence of Rogers' failure to comply with the very basic terms of his prior juvenile probation order, we cannot say that the district court erred in finding that Rogers would probably not comply with a future, more intense juvenile probation order. Rogers has demonstrated that he does not take such orders seriously.

On appeal, Rogers also argues that the district court erred in finding that the motivation behind the current offense was "self-aggrandizement." We find no abuse of discretion in the district court's finding. There was evidence presented at the transfer hearing which clearly supported the district court's finding. Such evidence included Rogers' escalating behaviors in the months preceding the May 2022 shooting and Rogers' social media posts. In addition, the surrounding circumstances of the current offense evidences Rogers' intent to terrorize and harm the victim and his associates.

Roger next argues that the district court incorrectly characterized his history of violent offenses when, in fact, he had only been previously adjudicated for one prior assault. Again, we find support for the district court's conclusion that Rogers' criminal history was concerning. While Rogers is correct that he had only been prosecuted for one prior violent offense, the evidence presented at the transfer hearing revealed a steady escalation in aggressive and violent behaviors in the months preceding the May 2022 shooting. Such pattern of escalation coupled with the evidence of his involvement with drugs, his possession of a stolen gun, and his disregard of the juvenile probation order provide support for the district court's concerns.

Ultimately, we find that the district court was properly concerned about the nature of Rogers' alleged criminal conduct, the safety of the public, and Rogers' need for extensive supervision over a period of years and the limited time available to the juvenile court to work with him. The court also expressed concern that Rogers' behavior had significantly escalated. Such escalation had occurred despite Rogers' previous involvement in the juvenile court. Even with that intervention, Rogers' behaviors continued to escalate and remain undeterred. The court viewed this factor as significant.

When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Leroux, supra*. Given the evidence in this case, we cannot say the district court abused its discretion in declining to transfer the case to juvenile court.

## VI. CONCLUSION

Finding no abuse of discretion by the district court in its decision to retain jurisdiction over Rogers, we affirm the district court's order denying Rogers' motion to transfer the proceedings to juvenile court.

AFFIRMED.