IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BOOKER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MALIK M. BOOKER, APPELLANT.

Filed June 6, 2023.    No. A-23-118.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Alton E. Mitchell for appellant.

Michael T. Hilgers, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Malik M. Booker appeals the order of the Douglas County District Court denying his request to transfer his criminal case to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

## II. STATEMENT OF FACTS

### 1. FACTS LEADING TO CHARGES

In the evening hours of October 16, 2022, Omaha police officers heard shots fired while on an unrelated call. Officers proceeded to the area, observed a vehicle known to have been stolen, and initiated a short pursuit during which the stolen vehicle fled at high speeds, without headlights, and violated stop signs. After the vehicle finally stopped, the passenger, later identified as Booker,

fled on foot. When he was apprehended, Booker possessed an AM-15 rifle. The stolen vehicle was valued at $5,784.

During their investigation, officers recovered several casings from the scene and learned that a home had been struck by gunfire. Four rounds hit an inhabited house and one of those shots went through a living room window and narrowly missed an individual who was inside the house sitting on his couch. Testing confirmed that the casings found at the scene were fired from the rifle recovered from Booker and another gun found in the vehicle on the driver's seat. As a result of the events, Booker was charged with discharging a firearm at an inhabited house, occupied building, or occupied motor vehicle, a Class ID felony; theft by receiving property valued at $5,000 or more, a Class IIA felony; and operating a motor vehicle to avoid arrest/willful reckless driving, a Class IV felony.

2. MOTION TO TRANSFER

In November 2022, Booker filed a motion to transfer to juvenile court. A one-day hearing thereon was held in January 2023. At the time of the hearing, Booker was 17 years old.

(a) Evidence Adduced by the State

The State adduced evidence as previously set forth and the State offered, and the court received, the following exhibits: Booker's criminal record; the police report related to the charged incidents; and an incident police report and arrest warrant arising out of Booker's alleged involvement in a carjacking that occurred in Lincoln, Lancaster County, Nebraska, on October 15, 2022, also involving an assault rifle.

Angi Messick testified that as a specialized probation officer with Douglas County Juvenile Probation, she supervises high risk youth including youth associated with gangs. Messick testified that she had never worked with Booker and that Booker had never been on juvenile probation in Douglas County.

According to Messick, interventions and services available in a juvenile proceeding include group homes and community-based services such as electronic monitoring, day and evening reporting, cognitive groups, and treatment if recommended by a therapist. She noted that placing juveniles in group homes or other housing providing rehabilitation "help youth have different positive behavior change" which is beneficial for community safety. She further testified that group homes with rehabilitative services have more services to offer youths than the Douglas County Youth Center. However, Messick noted that the charges against Booker would affect his placement options and that after a child turns 18 years old, the availability of services decreases "because a lot of places, group homes, [and] some services, will deny working with a youth after the age of 18." She further explained that due to Booker's age, it was unlikely that he could be placed in a group home and services would most likely be limited to the Youth and Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska.

Messick also explained that before Booker could be transferred to juvenile court, he would have to "clear everything" through both the Douglas County District Court and the Lancaster County District Court and then be adjudicated prior to receiving services which "could take up to six months." Further, the juvenile court would lose jurisdiction over Booker and services would end when Booker turned 19, even if Booker had not fully participated in rehabilitation.

## (b) Evidence Adduced by Booker

In support of Booker's motion to transfer to juvenile court, the defense adduced testimony from Heather Santoro, the Department of Health and Human Services case manager for Booker's family. Santoro testified that she became case manager for the Booker family approximately 2½ years ago based on a referral stemming from educational neglect by the parents which she described as "when students miss a significant amount of time from school without excused absences or any valid reason for missing school." Santoro testified that she meets with Booker and his siblings on a monthly basis; that she referred Booker for individual therapy related to depression and PTSD; and that other services available to Booker included in-home intensive family preservation, peer-to-peer mentoring, and gang intervention services. Santoro testified that during her time working with Booker, she did not see any indications that Booker was involved in gang activity.

Santoro stated that Booker "has a big heart. He cares very, very, deeply. He's very committed to his friends and his family. . . . [He] misses his mom and his dad very, very much. And he wants to succeed. He wants to do well in school. He's a good kid." She also described Booker as "a deep thinker" who is "very quiet, very guarded, [and] very wounded." However, she admitted that during her time working with Booker, his progress has been slow.

### 3. DISTRICT COURT ORDER

The district court overruled 17-year-old Booker's motion to transfer to the juvenile court in a 9-page order. Although the district court's order included detailed analysis, the court did not specifically lay out its findings regarding each factor set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2022). However, in the order, the court concluded:

> Given the serious nature of the offenses, [Booker's] age, maturity and the security of the public, the Court finds that the juvenile system would be inadequate to address these needs. Having balanced the public protections and societal security against the practical and non-problematic rehabilitation of [Booker], the Court finds and concludes that a transfer of jurisdiction is not appropriate and a sound basis exists to retain jurisdiction.

Specific findings contained in the court's order will be addressed in the analysis portion of this opinion. Booker has timely appealed to this court.

### III. ASSIGNMENT OF ERROR

Booker contends that the district court abused its discretion in denying his motion to transfer based upon the court's determination that a sound basis existed to retain the case in district court.

### IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

Booker argues that the district court abused its discretion in denying his motion to transfer because the State failed to meet its burden to show the case should not be transferred to the juvenile court.

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who: (1) are 11 years of age or older and commit a traffic offense that is not a felony, or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against such juveniles may be initiated either in juvenile court or in the county or district court. In the present case, the allegations against Booker put him within this category of juvenile offenders, and the State filed the charges against Booker in the district court.

When Booker moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to Neb. Rev. Stat. § 29-1816(3)(a) (Cum. Supp. 2022), which required consideration of the following factors set forth in § 43-276(1):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court[.]" § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less

weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

1. FACTORS FAVORING RETENTION

Although the district court did not specifically lay out is findings regarding each factor set forth in § 43-276, after reviewing the entirety of that order, we would classify the following factors as factors the district court found weighed in favor of the district court retaining jurisdiction over Booker.

(a) § 43-276(1)(a) – Type of Treatment
Amenable to Juvenile

Regarding the type of treatment such juvenile would most likely be amenable to, the court stated:

A transfer to juvenile court in this case would not allow [Booker] much time, if any, to work with the issues that present from these serious allegations and his escalating conduct. [Booker] is seventeen (17) years of age and was seventeen (17) at the time of the offense. He will turn eighteen (18) years old in roughly three months, on May 31st[, 2023]. He also has a warrant out of Lancaster Court for Robbery and Use [of a] Firearm to Commit a felony . . . It is very questionable whether [Booker] would have time to avail himself of the benefits and services offered in juvenile court. Before [Booker] could even start being evaluated in juvenile court, he would have to have [the] charges in Lincoln resolved as well. Only after both cases were resolved in District Court, would he begin the adjudication process which can take up to six (6) months. At best case, this would leave a year or less for service and treatment for serious violent crimes and issues that clearly would need more time. Santoro acknowledged that progress was slow with Booker and his issues could not be fixed overnight.

Additionally, with [Booker] turning eighteen (18) in May [2023], and the criminal charges involving use and possession of a gun, the type of services potentially available to Booker are extremely limited. Messick . . . explained [that,] in her opinion and experience, [Booker] would be limited to services at YRTC.

(b) § 43-276(1)(b) – Whether Alleged
Offenses Included Violence

The district court found that "[t]he offenses clearly involved violence, including the use and possession of a firearm. Many people . . . could have easily been killed as a result of [Booker's] actions."

(c) § 43-276(1)(c) – Motivation for
Commission of Offenses

The district court noted that the "motivation of the crimes was unknown but the actions are clearly adult in nature."

(d) § 43-276(1)(d) – Age of Juvenile
and Others Involved in Offenses

Regarding the age of the juvenile and the ages and circumstances of any others involved in the offense, the court noted that Booker was 17 years old at the time the offenses were committed and would turn 18 in late May 2023. The court noted that Booker's age would allow insufficient time for service and treatment for the serious and violent offenses for which Booker had been charged.

Although the district court did not mention the age of the co-defendant, the police reports which were admitted into evidence established that the co-defendant was also 17 years old at the time that the offenses were committed.

(e) § 43-276(1)(e) – Previous History of Juvenile

Regarding the previous history of the juvenile, including whether he had been convicted of any previous offenses or adjudicated in juvenile court, the district court found that Booker did not have any prior adjudications or convictions in Nebraska. However, the court noted that Booker had three missing juvenile entries in his record and that Booker had a Lancaster County warrant for his arrest for robbery and use of firearm to commit a felony which involved a carjacking.

(f) § 43-276(1)(f) – Juvenile's Best Interests

Regarding the best interests of the juvenile, the court stated that "[t]he best interests of [Booker] and society require detention or supervision beyond what [the] Juvenile Court could provide for him if he even had a desire to avail himself of services."

(g) § 43-276(1)(g) - Consideration for Public Safety

Regarding the consideration of public safety, the court noted that "[w]ithout any threat of violence or provocation, [Booker] shot an AM-15 rifle multiple times at an occupied dwelling." The court further noted that Booker "has shown escalating violent criminal propensity. The consideration of public safety from this type of unnecessary violence is a grave concern for the Court." The court also stated that "[c]onsideration of public safety weighs in favor of retaining jurisdiction over [Booker] for a longer period of time than the roughly a year remaining in his minority."

(h) § 43-276(1)(h) – Juvenile's Ability to Appreciate
Nature/Seriousness of Conduct

Regarding the consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct, the district court stated in its conclusion that it found that, given several factors including Booker's maturity, the juvenile system would be inadequate to address Booker's issues.

(i) § 43-276(1)(i) – Best Interests of Juvenile
and Security of Public

Regarding whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending

beyond his or her minority and, if so, the available alternatives best suited to this purpose, the court stated that Booker's best interests and society

> require detention of [Booker] beyond what [the] Juvenile Court could provide for him if he even had a desire to avail himself of services. Consideration of public safety weighs in favor [of] retaining jurisdiction over [Booker] for a longer period of time than the roughly a year remaining in his minority.

### (j) § 43-276(1)(l) – Unauthorized Use
### or Possession of Firearm

The court found that "[t]he offenses clearly involved violence, including the use and possession of a firearm."

### 2. FACTORS FAVORING TRANSFER

The district court appeared to find that two factors supported transfer to the juvenile court. The first factor is § 43-276(1)(n) – Gang Membership; the district court found that no evidence had been adduced regarding whether the Booker was a criminal street gang member. We note that Santoro testified that during her time working with Booker, she did not see any indications that Booker was involved in gang activity. The second factor is § 43-276(1)(m) – Juvenile Court Order; the district court found that no evidence had been adduced regarding whether a juvenile court order had been issued for Booker pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016).

### 3. NEUTRAL FACTORS

The district court's order identified three factors in its analysis that it appeared to consider neutral. Those are: (1) § 43-276(1)(j) – Restorative Justice; the court found that there was no evidence adduced regarding whether the victim had agreed to participate in restorative justice; (2) § 43-276(1)(o) – Other Relevant Matters; the court's order did not address any other relevant matters; and § 43-276(1)(k) – Juvenile Pretrial Diversion Program; the court found that there was no evidence adduced regarding whether there is a juvenile pretrial diversion program established pursuant to Neb. Rev. Stat. §§ 43-260.02 to 43-260.07 (Reissue 2016 and Cum. Supp. 2022).

### 4. NO ABUSE OF DISCRETION

Although the district court's analysis of factors under § 43-276(1) revealed several factors favoring transfer, there is no arithmetical computation or formula required in a court's consideration of the statutory criteria or factors. *State v. Esai P.*, 28 Neb. App. 226, 942 N.W.2d 416 (2020). There are no weighted factors, that is, no prescribed method by which more or less weight is assigned to each factor specified by statute. *Id.* It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.* "This means that a trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's safety in the event that rehabilitation fails or requires more time than anticipated." *State v. Leroux*, 26 Neb. App. 76, 118, 916 N.W.2d 903, 929 (2018).

As we often state in our review of juvenile transfer cases, these are difficult decisions for the trial court and for this court on appeal because of the young age of the defendants. However, a young age by itself does not support a transfer to the juvenile court. See *State v. Esai P., supra*

(setting forth cases of defendants as young as 14 or 15 years of age in which criminal proceedings were retained in district court because factors favoring public protection outweighed juvenile's young age, such as involvement with gangs and guns, violent nature of crime, or unlikely success of rehabilitation before juvenile reaches age of majority).

Booker argues that, in performing its balancing analysis, the district court erred because the practical and non-problematic rehabilitation of Booker outweighs any concerns for public security and protection. He argues that Booker was charged with committing serious offenses when he was 17 years old, that the offenses were isolated and that Booker did not have a violent criminal past, there was no evidence of premeditation, and that Booker needed "positive role models and rehabilitation through juvenile court and juvenile probation services." However, the district court was clearly concerned with the serious and violent nature of the offenses which involved the use of a firearm, the safety of the public, and Booker's need for supervision over a period of years exceeding the limited time that the juvenile court would have to work with him.

After reviewing the entirety of the record and the district court's order, we believe this case falls within the category of the "theme" this court expressed in *State v. Leroux, supra*. After summarizing numerous cases and their holdings, which we will not repeat here, this court held:

> The theme evident in the cases discussed above is this: When a juvenile commits a violent crime, the trial court is not likely to grant a request to transfer to the juvenile court because (1) the juvenile court will lose jurisdiction when the defendant turns 19 years of age which may not allow sufficient time for the complete rehabilitation of the juvenile, and therefore retention is necessary to ensure public safety, and (2) there is no secure youth detention facility available which can safely provide the appropriate services and treatment for a juvenile who has committed a more serious offense. This means that a trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's safety in the event that rehabilitation fails or requires more time than anticipated. The trial court's decision carries the consequence that if the decision is wrongly made, we have either missed an opportunity to rehabilitate a juvenile outside the negative influences of adult incarceration or failed to adequately incarcerate a potentially dangerous juvenile who will go on to commit further violent crimes. . . .

*State v. Leroux*, 26 Neb. App. 76, 118, 916 N.W.2d 903, 929 (2018).

Here, the district court concluded that the juvenile court's jurisdiction would not be sufficient given factors including the serious and violent nature of the charged offenses, which included the use of a firearm; the court's concern for public safety; and the fact that the juvenile court would automatically lose jurisdiction over Booker when he turned 19 years old regardless of whether he had benefitted from services provided to him. Based upon our review of the record, we cannot say that the court's basis for retaining jurisdiction over Booker was not supported by appropriate evidence. When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Leroux, supra*. Accordingly, based upon the evidence in this case, the majority of which supported the State's burden of proving a sound basis for retaining jurisdiction in the district court, we find no abuse of discretion in the district court's order denying Booker's request to transfer his case to juvenile court.

## VI. CONCLUSION

Finding no abuse of discretion by the district court in its decision to retain jurisdiction over Booker, we affirm the district court's order denying Booker's motion to transfer the proceedings to juvenile court.

AFFIRMED.